James H. Power
F. Robert Denig
HOLLAND & KNIGHT LLP
31 West 52nd St.
New York, NY  10019
Telephone:  (212) 513-3200
Telefax:  (212) 385-9010
james.power@hklaw.com
robert.denig@hklaw.com


ATTORNEYS FOR PLAINTIFF
CLASSIC MARITIME INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Classic Maritime Inc.,

                              Plaintiff,

              -against-

XCOAL ENERGY AND RESOURCES LLC D/B/A
XCOAL ENERGY AND RESOURCE,

                              Defendants.

Civ. Act. No. _____

**VERIFIED
COMPLAINT**

Plaintiff, Classic Maritime Inc. ("Classic" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, respectfully submits this complaint against Defendants XCoal Energy and Resources LLC d/b/a XCoal Energy and Resources ("XCoal" or "Defendants"), alleges as follows:

### JURISDICTION AND PARTIES

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of charter party agreements and the breach of a contract of affreightment.  This Court has admiralty jurisdiction

under 28 U.S.C. § 1333 and Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rule B"). Classic further brings this action pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 and 8 because it involves a maritime transaction (charter party agreements and a contract of affreightment) and Classic demands security for arbitration proceedings in the United States pursuant to the parties charter party agreement and contract of affreightment terms.

2.     Venue is proper in this District because XCoal's property is within the District and garnishees in possession XCoal's property within the meaning of Supplemental Rule B are located and can be served with process within the District.

## PARTIES

3.     Plaintiff Classic is an entity organized under the laws of the Republic of the Marshall Islands.  Classic is in the business chartering vessels for the purpose of shipping dry bulk cargos around the globe for its customers.

4.     XCoal is a limited liability company organized  under the laws of the Commonwealth of Pennsylvania with its principal place of business and headquarters located at One Energy Place STE 9300, Latrobe, PA 15650.   XCoal is a global coal marketing and logistics company that is known as or trades under the name XCoal Energy and Resources.

5.     XCoal cannot be found in the District within the meaning of Supplemental Rule B.

2

**<u>FACTS</u>**

6.     Classic and XCoal have engaged in a business relationship for several years where XCoal charters vessels from Classic to ship its coal and other products to its customers from ports in the U.S. to various locations around the world.  The parties course of dealing involved Classic and XCoal entering into chartering contracts including contracts of affreightment ("COA") whereby XCoal agrees to provide specific quantities of coal to be shipped on several voyages over a specific period of time, and Classic provides its time chartered vessels at certain specified rates within a certain period of time to perform those voyages.

7.     On December 2, 2019, Classic and Xcoal entered into a COA for the lifting of a total of 800,000 tons of coal (+/- 10% owner's option) from Baltimore, MD / Newport News, VA for discharge at various ports in Korea.

8.     Pursuant to the COA, XCoal was to lift (i.e. provide to Classic for shipment) the total tonnage of coal contemplated in the COA within one year beginning January 1, 2020 and ending December 31, 2020.  The total tonnage called for in the COA required shipment on no less than 7 vessels on separate voyages.  The COA did not provide for specific intervals for these shipments, meaning that XCoal was free to lift cargoes up to the total tonnage of coal provided for under the COA at any time within the time period provided for under the terms of COA.

9.     Pursuant to the COA, and consistent with the parties prior course of dealing, the terms of the COA and of the individual voyage charters were established pursuant to an amended AMWELSH (1979) charter party form, which was understood and intended by the parties to illustrate the "usual C/P terms-Classic/XCoal."

#81644646_v1

10. Classic would earn approximately $1,017,952 per voyage for each of the 5 remaining voyages that never were performed. Accordingly, Classic was damaged in the amount of USD $5,089,760.00 as a result of XCoal's breach of the COA in failing to nominate the required liftings, provide the coal cargo within the time frame allowable under the COA and pay the required freight for such 5 additional voyages.

11. Xcoal has also failed to pay Classic the balance of freight, demurrage and other charges totaling $120,037.32 in respect of the second voyage performed under the COA by the *M/V MINERAL NEW YORK* completed in July 2020.

12. With respect to the claims and damages sought in paragraphs 10 and 11 hereinabove, Classic has commenced arbitration against Xcoal.

13. Additionally, as of the filing of this complaint, XCoal also owes Classic a total of $11,554.35 in outstanding freight arising under other voyages separate from the voyages required under the COA. In all instances, these voyages were performed under the Amended AMWELSH Charter Party Form as was customary between Classic and XCoal, and which terms provide that "[f]ull freight is deemed earned as cargo loaded on board, discountless whether vessel and/or cargo lost or not lost."

14. Specifically, XCoal owes Classic for outstanding freight for a prior shipment of Xcoal's product on the *M/V CAPE SPENCER* in October 2019, which voyage was performed under a similar Amended AMWELSH Charter Party Form. As of the date of this filing, there remains outstanding freight for this voyage in the amount of $1,275.35 due and outstanding since October 20, 2019.

#81644646_v1

15.     XCoal also owes Classic for outstanding freight for a shipment of coal on the *M/V EPIC* in June 2020, which voyage was performed under the Amended AMWELSH Charter Party Form.  As of the date of this filing, there remains outstanding freight in the amount $10,278.95 due and outstanding since June 4, 2020.

16.     In each instance, XCoal timely received invoices for the above referenced outstanding freight, XCoal has not disputed those invoice, and XCoal has acknowledged that the amounts stated in those invoice are due and owing to Classic. Yet, XCoal has failed to pay the outstanding freight.

## COUNT I – BREACH OF THE COA

17.     Classic repeats and realleges the allegations set forth in Paragraphs 1 through 16 above as if fully set forth herein.

18.     XCoal was bound by the terms of the COA to ship a total of 800,000 metric tons of coal (+/- 10%), a total of 7 shipments, on Classic's time chartered vessels.  Classic fully performed under COA in that it timely provided vessels to ship each of the cargos of coal nominated by XCoal under the COA.  XCoal, however, breached the COA by only providing coal for 2 shipments, approximately 260,920 metric tons total.

19.     As a result of XCoal's breach of the COA, there remained approximately 613,080 metric tons of coal that never was lifted, and 5 shipments that were never were performed as required under the COA.

20.     As result of XCoal's breach of the COA, Classic was damaged in the amount of approximately USD $1,017,952 per voyage for each of the 5 remaining voyages (approximately USD $5,089,760 in total) that were required by the COA, but were never performed.

5

## Count II – Breach of Charter Party Agreements – Failure to Pay Freight

21.     Classic repeats and realleges the allegations set forth in Pargaphs 1 – 20 above as if fully set forth herein.

22.     XCoal and Classic have entered into three different voyage charters for the shipment of XCoal's coal and iron ore in 2019 and 2020, as more fully described in paragraphs 13 – 16 above.  Pursuant to these voyage charter party agreements, freight was "deemed earned as cargo loaded on board …" and freight was due without discount or offset.

23.     From October 20, 2019 through July 13, 2020 Classic has invoiced XCoal for unpaid freight under each of the aforementioned voyages amounting to a total of $131,591.62.  In each instance, XCoal has timely received the invoice for the referenced outstanding freight, XCoal has not disputed those invoices, and XCoal has acknowledged that the amounts stated in those invoices are due and owing to Classic.

24.     XCoal has breached the relevant voyage charter agreements by failing to pay the outstanding freight, amounting to $131,591.62, which amount remains due and owing to Classic without discount or off-set.

## REQUEST FOR ORDER OF MARITIME ATTACHMENT

25.     Owners repeat and reallege the allegations set forth in paragraphs 1 through 24 above as if fully set forth herein.

26.     As noted above, consistent with the course of dealing between the parties, the terms of the Amended AMWELSH Charter Party Form provided the terms of the COA and the individual voyage charter party agreements entered into between XCoal and Classic at all relevant times.

6

27.    Pursuant to Clause 5 and 54 of the Amended AMWELSH Charter Party Form, any and all disputes arising under the COA or the voyage charters shall be referred to arbitration in the City of New York pursuant to the rules of the Society of Maritime Arbitrators and governed  U.S. Maritime Law.

28.    Owners have commenced arbitration in New York against XCoal under clause 5 and 54 of the Amended AMWELSH Charter Party Form with respect to the claims and damages asserted in this complaint.

29.    Under the SMA Rules, the prevailing party in the arbitration is entitled to an award of its attorneys' fees and expenses.  Attorneys' fees and arbitration expenses from the aforementioned maritime arbitration are estimated to be $550,000.

30.    It is estimated that it will take approximately one (1) year to resolve this matter. Under relevant U.S. law and arbitration procedure, a reasonable interest rate is 3.25%, resulting in the following estimated interest and attorneys' fees in addition to Plaintiff's principal claim and additional demurrage to be accrued:

| | |
|---|---|
| Principal Claim for Damages Arising Under the COA for failure to provide required cargo: | $ 5,089,760.00 |
| Outstanding and Unpaid Freight: | $ 131,591.62 |
| *Sub-Total* | *$ 5,221,351.62* |
| Pre-judgment Interest (3.25%) | $ 169,963.93 |
| Attorneys' Fees | $ 550,000.00 |
| **Total** | **$ 5,941,315.55** |

7

31.     XCoal is not found within the Southern District of New York but do have goods, chattels, credits, bills of lading, debts, effects and monies, funds, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, is claimed by them, is being held for them or on their behalf, or which is being transferred for their benefit, within the jurisdiction.

32.     Classic has specific information and details for bank accounts within the district belonging to XCoal at Citibank, N.A. and PNC Bank N.A., which accounts upon information and belief Defendants have used recently to pay other charterers and creditors.

33.     It is believed that further accounts belonging to XCoal may be present at the following institutions:

Bank of America N.A.

The Bank of New York/Mellon

Commerzbank AG

Deutsche Bank AG

HSBC Bank (USA), N.A.

JPMorgan Chase Bank, N.A.

Standard Chartered Bank

UBS AG

Wells Fargo Bank, N.A.

34.     While all disputes arising out of the COA and voyage charter party agreements will be arbitrated in New York, this action is submitted in accordance with Rule B as well as 9 U.S.C.

#81644646_v1

§ 8 and should not be considered a waiver of the arbitration clause in the COA and relevant voyage charter party agreements as provided for in the Amended AMWELSH Charter Party Form.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Classic respectfully demands judgment as follows:

1. That process in due form of law according to the practice of this Court in the form of a writ of maritime attachment be issued against the defendants XCoal Energy and Resources LLC and XCoal Energy and Resources in the amount of **$ 5,941,315.55** (including estimated interest, and attorneys' fees), and if Defendants cannot be found, that their goods, chattels, credits, bills of lading, debts, effects and monies, funds, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, is claimed by them, is being held for them or on their behalf, or which is being transferred for their benefit, within the district may be attached in an amount sufficient to answer Plaintiff's claim;

2. That Defendants or any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3. The pursuant to Rule 4(c)(1) & (2) of the Federal Rules of Civil Procedure that the writs of attachment and garnishment may be served by any person who is not less than 18 years old, and who is not a party to this action;

4. That in light of the current situation surrounding COVID019, service of the said process of maritime attachment and garnishment may be made by facsimile transmission or other verifiable electronic means, including e-mail, to the garnishees banks identified in this complaint;

#81644646_v1

5. That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as Judgment of this Court, along with awarding Plaintiff's attorneys' fees and costs in connection with these actions;

6. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

7. That the Court grant any other relief in favor of Plaintiff that it deems just and proper.


Dated: January 27, 2021
        New York, New York

                                        Respectfully submitted,

                        By:        _s/ James H. Power_____
                                   James H. Power
                                   F. Robert Denig
                                   HOLLAND & KNIGHT LLP
                                   31 West 52nd Street
                                   New York, NY 10019
                                   Telephone: (212) 513-3200
                                   Facsimile: (212) 385-9010
                                   Email: james.power@hklaw.com
                                   Email: robert.denig@hklaw.com


                                   *Counsel for Classic Maritime Inc.*

## <u>VERIFICATION</u>

I, James Power, declare as follows:

I am a partner with the firm of Holland & Knight LLP, counsel for plaintiff Classic Maritime Inc., ("Plaintiff"). I have read the foregoing Verified Amended Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Plaintiff's representatives and corresponded with Plaintiff's representatives regarding this matter. I am authorized by Plaintiff to make this verification, and the reason for my making it as opposed to an officer or director of Plaintiff is that there are none within the jurisdiction of this Honorable Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of January, 2021.

*s/ James H. Power*
_____

James H. Power

#81644646_v1