James H. Power
F. Robert Denig
HOLLAND & KNIGHT LLP
31 West 52nd St.
New York, NY  10019
Telephone:  (212) 513-3200
Telefax:  (212) 385-9010
james.power@hklaw.com
robert.denig@hklaw.com

ATTORNEYS FOR PLAINTIFF
CLASSIC MARITIME INC.,

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLASSIC MARITIME INC.,<br><br>                          Plaintiff,<br><br>          -against-<br><br>XCOAL ENERGY AND RESOURCES LLC, D/B/A<br>XCOAL ENERGY AND RESOURCES,<br><br>                          Defendants. | Civ. Act. No. 1:21-cv-00766 (ACL) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO
VACATE WRIT OF ATTACHMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................II

INTRODUCTION ..........................................................................................................1

ARGUMENT ..................................................................................................................2

A.    XCoal is Not "Found" Within The Jurisdiction Because, Under Current New York Law XCoal is Not Subject to Personal Jurisdiction in This District Merely by its Registration as a Foreign Business Entity With The New York Secretary of State ........2

B.    Adjacent Jurisdiction Doctrine is Not Applicable Here ...............................10

C.    XCoal's Arguments Concerning the Merits of Classic's Claim Do Not Provide a Basis For Vacating the Attachment ...........................................................13

1.    The Rule B Prima Facie Standard ................................................................14

2.    XCoal's Arguments Are Not Germaine To The Rule B Prima Facie Standard And Are Otherwise Meritless ...............................................................16

(i)    Classic's Claim For Breach Of the COA is Not a Claim for Unpaid or Outstanding Freight ...................................................................................16

(ii)    Classic's Mitigation Efforts .....................................................................17

(iii)    Force Majeure is an Affirmative Defense And is Not Germaine to the Rule B Prima Facie Claim Analysis ....................................................................19

CONCLUSION ...............................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaby v. States Marine Corp.*,
107 F. Supp. 484 (S.D.N.Y. 1951)...................................................................................17

*Al Fatah Intern. Nav. Co. Tld. V. Shivsu Canadian Clear Waters Technology*,
649 F. Supp. 2d 295 (S.D.N.Y. 2009)..........................................................................14, 15

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
460 F.3d 434 (2d Cir. 2006)........................................................................................11, 12

*Aybar v. Aybar*,
93 N.Y.S.3d 159 (NY App. 2d Dep't 2019) ......................................................................9

*Best v. Gurhie Med. Grp., P.C.*,
107 N.Y.S.3d 258 (NY App. 4th Crp't 2019)....................................................................9

*Brown v. Lockheed Maritime Corp.*,
814 F.3d 619 (2d Cir. 2016).............................................................................................9

*Chilean Line Inc. v. United States*,
344 F.2d 757 (2d Cir. 1965)..............................................................................................7

*Chufen Chen v. Dunkin' Brands, Inc.*
954 F.3d 492 (2d Cir. 2020).........................................................................................3, 9

*Citing to Hanson v. Denckla*,
357 U.S. 235 (1958)..........................................................................................................6

*Diamler AG v. Bauman*,
571 U.S. 117 (2014)......................................................................................................3, 10

*Dolco Inv., Ltd. v. Moonriver Development, Ltd.*
486 F. Supp. 2d 261 (S.D.N.Y. 2007)..............................................................................14

*Fekah v. Baker Hughes Inc.*,
110 N.Y.S. 3d 1 (NY App. 1st Dep't 2019) ......................................................................9

*First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LCC*,
540 F. Supp. 2d 483 (S.D.N.Y. 2008)...............................................................................12

ii

*International Shoe Co. v. Campania Columbiana Del. Caribe, S.A.*
    326 U.S. 310 (1945)..............................................................................................5, 6

*Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V.*, 08-cv-1239,
    2008 WL 839714 (S.D.N.Y. 2008)........................................................................12

*Morewood v. Enequist,*
    64 U.S. 491 (1859).................................................................................................14

*Nissho-Iwai Co., Ltd v. Occidental Crude Sales, Inc.,*
    792 F.2d 1530 (5 th Cir. 1984) ..............................................................................19

*Norfolk S. Ry. Co. v. Kirby,*
    543 U.S. 14 (2004).................................................................................................14

*Padre Shipping, Inc. v. Yount He Shipping,*
    559 F. Supp. 2d 328 (2008) .............................................................................15, 18

*Phillips Puerto Rico Core, Inc. v. Tradax Petroleum Ltd,*
    782 F.2d 314 (2d Cir. 1985)...................................................................................19

*Seawind Compania, S.A. v. Crecent Line, Inc.,*
    320 F.2d 580 (2d Cir. 1963)........................................................................ *passim*

*Swift & Co. Packers v. Compania Colombiana Del Caribe, SlA.*
    339 U.S. 684 (1950).................................................................................................2

*Transportes Navieros y Terrestes v. Fairmount Heavy Transp. N.V.*, 07-cv-3076,
    2007 WL 1989309 (S.D.N.Y. July, 6 2001) ..........................................................14

*Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.,*
    519 F. Supp. 2d 399 (S.D.N.Y. 2007).....................................................................14

*Williamson v. Recovery Ltd. P'ship,*
    542 F.3d 43 (2d Cir. 2008)..........................................................................1, 3, 13

**Statutes**

New York Business Corporation Law § 1304 ....................................................2, 3, 8, 9

**Other Authorities**

Admrialty Rule 2...........................................................................................................4, 5

Supplemental Rule Rule B.................................................................................. in passim

iii

Supplemental Rule Rule E ................................................................................................1, 2, 1315

24 Williston on Contracts § 64:1 (4th ed.).....................................................................................17

J. Calamari & J. Perillo, *The Law of Contracts* 521 (2d ed. 1977)................................................17

#81893842_v6

Plaintiff, Classic Maritime Inc. ("Classic" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, submits this Memorandum of Law in Opposition to Defendants XCoal and Energy and Resources LLC d/b/a XCoal and Energy and Resources ("XCoal" or "Defendants") Motion to Vacate Writ of Attachment pursuant to Supplemental Admiralty Rule E(4)(f) (Dkt. # 12).  For all of the reasons stated herein, Defendants' Motion should be denied.

## INTRODUCTION

The Court granted Classic's application for a Rule B attachment and issued an order for maritime attachment on February 1, 2021.  (Dkt. # 10) (the "Attachment").  XCoal now moves to vacate the Attachment.  Dkt. # 17.  The requirement for obtaining a Rule B attachment are well stated and undisputed.  To obtain a Rule B attachment the Plaintiff must show only that:

1.   it has a valid *prima facie* admiralty claim against the defendant;

2.   the defendant cannot be found within the district;

3.   the defendant's property may be found within the district; and

4.   there is no statutory or maritime law bar to the attachment.

*See e.g., Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008).  This Court, having preliminary found that these conditions exist here, issued the Attachment.

Under Rule E(4)(f) a person claiming an interest in attached property is entitled to a "prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."  For all of the reasons stated below and in its memorandum of law in support of its Rule B application (Dkt. # 5), Classic submits that it has shown that all of the conditions for Rule B attachment are present in this action. Accordingly, XCoal's motion to vacate should be denied.

1

## ARGUMENT

**A.    XCoal is Not "Found" Within The Jurisdiction Because, Under Current New York Law XCoal is Not Subject to Personal Jurisdiction in This District Merely By Its Registration as a Foreign Business Entity With the New York Secretary of State**

XCoal's motion presents the question of what it means to be "found" within the district for the purposes of Rule B.  Rule B(1) states that:

> If a defendant is *not found within the district* when a verified complaint praying for attachment and the and affidavit required by RuleB(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process.

(emphasis added).[1]  XCoal argues that they are found within this District because they are a foreign entity that is registered to do business in New York and maintains a registered agent for service of process in New York.  Dkt. # 17, at 4.  In support, XCoal relies on *STX Panocean (UK) v. Glory wealth Shipping*, 560 F.3d 127, 128 (2d Cir. 2009) (finding that "registration with the New York Department of State, pursuant to New York Business Corporation Law § 1304, to conduct business in New York, and designation of an agent within the district upon whom process may be served constitutes being "found" within the district for purposes of Rule B …").

---

[1] The relevant time period for determining whether a defendant is found within the district is when the verified complaint was filed.  *See* Rule B(1), Advisory Committee Notes (2005 Amendments).  XCoal first entered a restricted appearance pursuant to Rule E(8) in this action after the Verified Complaint was filed to oppose Classic's Rule B application.  Dkt. # 8-1, at 1.  XCoal now apparently seeks to enter a general appearance, no doubt for the sole purpose of arguing that such general appearance renders is "found" within the district.  Dkt. 17, at 1.  "While the [maritime attachment] process may be utilized only when a respondent is not found within the jurisdiction, an attachment is not dissolved by the subsequent appearance of respondent."  *Swift & Co. Packers v. Compania Colombiana Del Caribe, SlA*. 339 U.S. 684, 693 (1950).

The finding in *STX Panocean* was reached by the application of a two pronged test for determining whether a defendant is "found" within the District:  "First, whether [Defendants] can be found within the district *in terms of jurisdiction*, and second, if so, whether [they]can be found for service of process."  *Id*. at 130 (emphasis added) (citing *Seawind Compania, S.A. v. Crecent Line, Inc*., 320 F.2d 580, 582 (2d Cir. 1963)).  The Parties in this action agree that this test (the *Seawind* Test) still applies.  Only the first prong of the *Seawind* Test is at issue here.

The "found" within the District language of Rule B, and the *Seawind* Test, and the finding in *STX Panocean*, are at their core about personal jurisdiction.  The relevant question is whether the defendant can actually be sued *in personam* in the court where the Rule B action was commenced.  At the time that *STX Panocean* was decided, it was "well-settled under New York law that registration under [New York Business Corporation Law] § 1304 subjects foreign companies to personal jurisdiction in New York."  560 F.3d at 131.  This is no longer so.

Since the Supreme Court's decision in *Diamler AG v. Bauman*, 571 U.S. 117 (2014) (decided after *STX Panocean*) it is now well-settled that registration under New York Business Law § 1304 does not alone subject foreign companies to personal jurisdiction in New York.  *See e.g., Chufen Chen v. Dunkin' Brands, Inc*. 954 F.3d 492, 499 (2d Cir. 2020) ("Accordingly, in light of *Daimler*, our own precedent, and the unanimous conclusion of the three New York intermediate courts to have considered the issue, we now hold that a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in that state and designating an in-state agent for service of process under BCL § 1301(a)").  XCoal is not subject to general personal jurisdiction, nor is it otherwise subject to this Court's jurisdiction such that Classic could bring its claims against XCoal *in personam* in this suit as Classic's claims do not

3

arise out of XCoal's activities in or registration with the State of New York. Accordingly, the first prong of the *Seawind* Test is satisfied in that XCoal cannot be found within the district *in terms of jurisdiction*, and thus XCoal is not "found" within the district for the purposes of Rule B.

XCoal argues that the decision in *Daimler* does not change the analysis in *STX Panocean*, implying that *STX Panocean's* finding that mere registration alone is sufficient to be "found" within the district created a bright line rule. In support of this position, XCoal cites at length to *Beauty Maritime Inc. v. Sitgma Tankers Inc.*, 1:20-cv-4379, at slip opp. p. 2-3 (S.D.N.Y. June 12, 2020), in which decision Judge Broderick reasoned that the Due Process Clause's general personal jurisdiction test was not coterminous with Rule B's "found within the district" requirement, and thus "*Daimler*'s general personal jurisdiction test, which specifically focuses on the defendants economic and physical activities in the forum state, runs counter to the standard established in *STX*." However, the *Seawind* Test, from its inception, contemplated looking towards a defendant's activities and contacts within a State to determine whether it is found within the district for the purposes of Rule B in a way that is precisely conterminous with the principles of general personal jurisdiction applicable at the time.

For example, in *U.S. v. Cia. Naviera Continental S.A.*, when considering a defendant's motion to vacate a maritime attachment the district court examined the language of Rule 2 of the Admiralty Rules (the predecessor to Rule B in effect at the time) stating that a maritime attachment may be issued only if the "respondent shall not be found within the district." 178 F. Supp. 561, 563 (S.D.N.Y. 1959). The court found that determining whether a non-resident corporation can be found within the district presented a two pronged inquiry: "first, whether it can be found within

the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *Id*. The Court continued:

> The first inquiry is directed to whether or not the respondent is present within the district by reason *of activities on its behalf* by authorized agents *so as to subject it to this Court's jurisdiction in in personam proceedings*.

*Id*. (emphasis added).

In support of this proposition, the court cited to *International Shoe Co. v. Campania Columbiana Del. Caribe, S.A*. 326 U.S. 310 (1945), which at the time was the controlling Supreme Court precedent with respect to the Due Process Clause's personal jurisdiction test. In other words, to satisfy the first prong of the "found" within the district inquiry, the court looked to the *International Shoe* test for personal jurisdiction." The court noted that for this reason in maritime attachment cases defendants often "argue in reverse of the contention usually made when resisting jurisdiction." *Id*. 563, n. 2 (citing *Federazione Italiana dei Consorzi Agrari v. Mandask Compania D.V.*, 158 F. Supp. 107, 111, 109 (S.D.N.Y. 1957) (holding that, when examining whether a non-resident corporation may be found within the district for the purposes of maritime attachment, "[a] foreign corporation can be said to be present and doing business within the jurisdiction when its activities within this district are sufficient to make it not unfair or unreasonable to require it to respond to suit in this forum")).

To determine whether the defendant was "found" within the district, the court examined the defendant's contacts in the state, including its activities in the district and whether it was doing business within the district. *Id*. In performing this analysis, and again citing to *International Shoe*, the court further noted:

Each case must be governed by its own facts, *depending upon the amount and nature of activities* within the forum and whether it would be reasonable and just to call upon the foreign corporation to respond to the suit.

*Id*. at 564.  In other words, the "found" within the district test reflected the "minimum contacts" Due Process test for determining whether the defendant was subject to personal jurisdiction in the particular suit, or in the State generally.

A few years later, in *Seawind Compani, S.A. v. Crescent Line, In*c. 320 F.2d 580, 582 (2d Cir. 1963) the Second Circuit adopted the two pronged test stated in *Cia. Naviera*, noting that it had become the applicable test developed through years of precedent.  With respect to the first prong of the test, the *Seawind* Court stated that the pertinent question was "whether [defendant] was to be 'found within' the Southern District of New York for the purpose of being subject to *in personam* jurisdiction in the court below."  *Id*. at 583.  Citing cases dating back to 1916, the court noted that the first prong of the test requires an inquiry into whether a defendant is "engaged *in sufficient activity in the district to subject it to jurisdiction* even in the absence of a resident agent expressly authorized to accept process."  *Id*.  (emphasis added) (citing *American Potato Corp. v. Boca Grande S.S. Co.*, 233 F. 542, 543 (E.D. Pa. 1916)).  The court affirmed the district court's vacatur of the attachment finding that the defendant's specific contacts with the State related to the underlying dispute were sufficient to render the defendant subject to suit in New York.  *Id*.  The court, however, noted that a defendant could also be "found" within the district if its contacts with and activities in the state would qualify as "doing business" under the ordinary personal jurisdiction test.  *Citing to Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (examining limits of the "minimum contacts" test under *International Shoe*).

Thus, *Seawind* confirmed that the "found" within the district test is aligned and reflective of the test for determining personal jurisdiction in the suit, or alternatively, general personal jurisdiction in the state applying the concepts of Due Process as guided by the controlling Supreme Court precedent at the time.   *See also, Chilean Line Inc. v. United States*, 344 F.2d 757, 760 (2d Cir. 1965) (applying the two pronged *Seawind* Test and finding that defendant could be "found within the district in terms of jurisdiction" in the Southern District of New York because the defendant was a New York corporation "and as such, in accordance with concepts of due process is [] subject to personal jurisdiction in all the federal and state judicial districts within the … State of New York …").

*STX Panocean* did not change the *Seawind* Test.   In fact, the *STX Panocean* Court explained how the test arose over the years out of the traditional nature and purpose of maritime attachments:

> Maritime attachments arose because it is often more  difficult to obtain jurisdiction over parties to a maritime dispute than parties to a traditional civil action.  Maritime parties are itinerant, their assets transitory.  *See in re Louisville Underwriters*, 134 U.S. 488, 493, 10 S.Ct. 587, 33 L.Ed. 991(1890).  Thus, the traditional policy underlying maritime attachment has been to permit the attachment of assets wherever they can be found, there-by obviating the need for a plaintiff to "scour the globe" to find a proper forum for suit, or property of the defendant sufficient to satisfy a judgment.  *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 443 (2d Cir. 2006).

> As such, an attachment under Admiralty Rule B serves two purposes.  The attachment establishes jurisdiction over a portion of a defendant's property and thereby creates a fund from which a judgment may be satisfied.  *See Seawind Compania, S.A. v. Crescent Line, Inc*., 320 F.2d 580, 581-82 (2d Cir. 1963). … Thus, Rule B gives potential defendants the choice between *subjecting themselves to the jurisdiction of the courts of the district in question, or making themselves vulnerable to the possibility that their property in the district will be attached.  See Daehan Shipping Co., Ltd. v. Farenco Shipping Co., Ltd.*, No. 08 Civ. 10052, 2008 WL 5068952, at *1 (S.D.N.Y. Nov. 24, 2008).

7

***

> While the purpose of the prongs [of the *Seawind* Test] cannot be separated, they are distinct:  the presence of an agent authorized to accept process is, alone, insufficient to establish that a defendant is "found" within that district.  *See Seawind,* 320 F.2d at 583.  Similarly, sufficient contacts to establish in personam jurisdiction in the *International Shoe* sense, absent a showing of actual presence that would allow a plaintiff to locate the defendant in the district for service of process, will not support a conclusion that a defendant is found within that district … ."

560 F.3d at 130 – 131 (emphasis added).

In this respect, the principles of personal jurisdiction and Rule B's "not found" within district language are two opposite sides of the same coin.  The very purpose of maritime attachments is to allow a plaintiff to attach a defendant's property in the district when, and only when, the plaintiff could not bring its claims against that defendant *in personam* in that same district (either because of a lack of personal jurisdiction, or because the defendant cannot be served in the district).   Accordingly, there should be no light between personal jurisdiction and being "not found" within the district under Rule B.  Any gap between the two standards that would allow a defendant to both be "not found within the district" for the purpose of Rule B, and also not subject to personal jurisdiction in that same district, would offend the very purpose of maritime attachments.

The *STX Panocean* Court recognized this concept, and the finding in *STX Panocean* was not intended to create such a gap.  Rather, all the finding in *STX Panocean* states is that, because at that time registration under the New York Business Corporation Law subjected registered non-resident corporation to general personal jurisdiction within the state, registration alone was enough to satisfy the first prong of the *Seawind* Test.  *Id*. at 131.  The *STX Panocean* Court noted, however, that courts must "look to New York law to determine whether the Defendants can be found within

the Southern District."  Accordingly, the finding in *STX Panocean* was based on the controlling New York law at the time.  Since *Daimler*, the controlling New York law on this very issue has materially changed.

It is now well-settled that mere registration under New York Business Corporation Law no longer subjects registered non-resident corporations to general personal jurisdiction in New York. *Chufern Chen*, 954 F.3d at 499;  *Brown v. Lockheed Maritime Corp.*, 814 F.3d 619, 640 (2d Cir. 2016) ("If mere registration and the accompanying appointment of an in-state agent … sufficed to confer general jurisdiction … *Daimler*'s ruling would be robbed of any meaning … ."); *Aybar v. Aybar*, 93 N.Y.S.3d 159, 165 (NY App. 2d Dep't 2019) ("A corporate defendant's registration to do business in New York … does not constitute consent by the corporation to submit to the general jurisdiction of New York for causes of action that are unrelated to the corporation's affiliations with New York) (citing *Daimler*); *Best v. Gurhie Med. Grp., P.C.,* 107 N.Y.S.3d 258, 261-62 (NY App. 4th Crp't 2019) (same); *Fekah v. Baker Hughes Inc.*, 110 N.Y.S. 3d 1, 2 (NY App. 1st Dep't 2019) (same).  In light of this change in New York law, if courts in this district apply the *STX Panocean* finding as if it is a bright line rule, it will create exactly the type of gap that the *Seawind* Test seeks, in part, to avoid (i.,e situations where a defendant may not be "found within the district" for the purposes of Rule B, but also is not "found" within the district for the purposes of personal jurisdiction).  This is just such a case.

There is no dispute that New York is not XCoal's formal place of incorporation or  its principal place of business, or that XCoal's operations in New York are not "so substantial and of such a nature as to render the corporation at home in the State" such that would establish general

jurisdiction under *Daimler.* 571 U.S. at 133.[2] XCoal's mere registration is no longer sufficient to establish general personal jurisdiction in New York. And, there is no connection whatsoever between the allegations in the Verified Complaint, the defendant, and New York such as to rendered XCoal subject to specific jurisdiction in this forum. XCoal is not "found within" the Southern District of New York for the purposes of being subject to *in personam* jurisdiction in this Court, and thus XCoal is not found within this district for the purposes of Rule B. *Seawind*, at 583.

Accordingly, Defendants motion to vacate should be denied.

## B.     Adjacent Jurisdiction Doctrine is Not Applicable Here

XCoal argues for an equitable vacatur of the Attachment on the grounds that it is present and subject to jurisdiction for all claims brought against it in Pennsylvania. Dkt. # 17, at 5-7 (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) ("while … the exact scope of a district court's vacatur power is not before us, we believe that a district may vacate the attachment if the defendant shows at the Rule E hearing that [] the defendant is subject to suit in a convenient *adjacent jurisdiction* …") (emphasis added)). XCoal has the burden of showing its entitlement to equitable vacatur. *Id*. XCoal suggests that Pennsylvania is a convent "adjacent jurisdiction."

---

[2] In fact, based on the allegations in Classic's Verified Complaint and the supporting declaration of James H. Power (Dkt. # 4, ¶ 4 - 6), XCoal has no presence whatsoever in New York and does not do business in the State. XCoal has not disputed these contentions.

#81893842_v6

XCoal candidly admits that Pennsylvania is not adjacent to this District (in fact, the Western District of Pennsylvania where XCoal is located is not even adjacent to a district that is adjacent to this District).   But, XCoal argues, citing to only one case, that the term "adjacent" is not meant to be read so literally.   Dkt. # 17 at 6 (citing *China Nat. Chartering Corp. v. Pactrans Air & Sea Inc.*, 589 F. Supp. 2d 403, 405-06 (S.D.N.Y. 2008)).   In *Chana Nat.*, however, both the plaintiff and defendant who's assets were attached were involved in pending litigation in the Northern District of Florida concerning the same claims that were the subject of the New York Rule B action, and both parties had appeared in that Florida action and had asserted claims and counter-claims against each other.   *Id.*   The Rule B defendant in the New York action argued that the attachment should be vacated "because 1) [the parties] both appeared *in personam* in the Florida action and, in any case, (2) [defendant] would be subject to *in personam* jurisdiction in another jurisdiction convenient to [the plaintiff]."   *Id.* at 404.   The Court granted the motion to vacate on equitable grounds based on the first theory.   *Id*. at 405.   The circumstances in *Chana Nat*. are not present here.   XCoal and Classic are not involved in pending litigation in another district in which both parties have appeared *in personam*.

Furthermore, while the *Aqua Stoli* Court may not have meant for "adjacent jurisdiction" to be read literally, the court certainly did mean for the equitable grounds for vacatur on the basis of "adjacent jurisdiction" to be applied narrowly – and geography *does* matter.

> The concept of "convenience," however, is a narrowly circumscribed one: A district court may vacate a maritime attachment only if the defendant would be subject to an *in personam* lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought.   An "across the river" case where, for example, assets are attached in the Eastern District but the defendant is located in the Southern District is a paradigmatic example of a case where an attachment should be vacated. It is less clear to us that a district court could vacate an attachment on convenience

11

grounds where the adjacent district is more remote and therefore less obviously "convenient" to the Plaintiff.

460 F.3d at 444.  In fact, in *First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LCC*, 540 F. Supp. 2d 483, 485 (S.D.N.Y. 2008), the court contemplated that an "'adjacent district' is generally viewed as one of another federal court within the same state (such as the Eastern District to the Southern District of New York), not one in a different state, even if the two states are adjacent."   Accordingly, the court rejected the defendants argument that the District of Connecticut was a convenient "adjacent jurisdiction." *Cf. Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V.*, 08-cv-1239, 2008 WL 839714 (S.D.N.Y. 2008) (finding that the District of New Jersey was a convenient adjacent jurisdiction where the defendant's principal place of business was in Hoboken, New Jersey – literally just "across the river" from the Southern District of New York).  Pennsylvania is not an adjacent jurisdiction, and thus XCoal's argument for equitable vacatur should be rejected.

XCoal further notes that Classic has commenced against it a Rule B action in the Western District of Texas, and XCoal seems to suggest that since Classic (a Marshall Island corporation) is able to commence an action in Texas (which admittedly is further from this District than Pennsylvania), that it is equally convenient for Classic to commence an action against XCoal anywhere in the U.S., and certainly in Pennsylvania.  Dkt. # 17 at 6 - 7.  However, that action is not an action on the merits of Classic's claims, but rather an action pursuant to Rule B.  Furthermore, XCoal has not appeared *in personom* in that action, and they have not claimed that they are "found" in the Western District of Texas.  In any event, XCoal's logic seeks to stretch the scope of the adjacent jurisdiction further than it has ever been applied before.  The Second Circuit has soundly rejected similar arguments.

In *Williamson v. Recovery Limited Partnership*, 542 F.3d 43 (2d Cir. 2008), a case in which all of the parties were from the United States, defendants argued that *Aqua Stoli*'s "adjacent jurisdiction" equitable vacatur grounds should apply because of the common U.S. connection between the parties.   The Second Circuit affirmed the district court's refusal to grant equitable vacatur, stating:

> These Defendants are not located in New York, and thus are not subject to suit in a convenient adjacent jurisdiction.   Moreover, Defendants have not demonstrated that they are subject to personal jurisdiction in the districts where the Plaintiffs are located …

*Id*. at 51.   In other words, despite all of the parties being located in the United States, none were located in an adjacent jurisdiction, and the Second Circuit held that the mere fact that defendants were located in other U.S. States was not sufficient to justify equitable vacatur.

Accordingly, XCoal's motion to vacate should be denied.

### C.      XCoal's Arguments Concerning the Merits of Classic's Claim Do Not Provide A Basis For Vacating the Attachment

In support of its motion to vacate, XCoal presents arguments concerning the merits of Classic's claim related to XCoal's breach of the COA.  Dkt. # 17, at 7-10.  XCoal has not presented an argument as to how these issues concerning the merits of Classic's claims relate to the applicable standards for obtaining a Rule B attachment, or why such arguments are appropriate in the Rule E(4)(f) context.  They are not.  But, viewed in the most charitable light possible, XCoal's arguments could be construed as an attempt to argue that Classic has failed to state a valid *prima facie* admiralty claims.  But even when viewed in that light, XCoal's arguments are misplaced and misconstrues the *prima faci*e claim standard under Rule B.

13

### 1.    The Rule B Prima Facie Standard

The *prima facie* standard under Rule B does not require the Court to evaluate the merits of a plaintiff's claim.   Rather the *prima facie* standard is satisfied if the complaint merely demonstrates that the plaintiff has a claim that is "cognizable in admiralty [i.e.] … one which will support a finding of admiralty jurisdiction." *Dolco Inv., Ltd. v. Moonriver Development, Ltd*. 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007) (quoting *Winter Storm Shipping. Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002)); *see also Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*, 519 F. Supp. 2d 399, 409 (S.D.N.Y. 2007) ("under [the Rule B *prima facie* standard], the Court looks only to the Complaint to determine whether the plaintiff has alleged a valid admiralty claim against the defendant").

The court must first determine that the claim is an admiralty claim.  *See Al Fatah Intern. Nav. Co. Tld. V. Shivsu Canadian Clear Waters Technology*, 649 F. Supp. 2d 295, 298 (S.D.N.Y. 2009).  XCoal does not dispute that Classic's claim for breach of the COA is a quintessential admiralty claim.  *Morewood v. Enequist*, 64 U.S. 491, 494-95 (1859) ("charter-parties and contracts of affreightment are 'maritime contracts' within the true meaning and construction of the Constitution and act of Congress"); *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004) (confirming that cases involving maritime contracts give rise to admiralty jurisdiction).

Next, "the court must determine that the claim is facially sound, that is, that the claim is, on its face and without investigation, sound or well-founded."  *Al Fatah Intern. Nav. Co.*, 649 F. Supp. 2d at 298.  Courts should not conduct a trial on the merits at this stage of the proceedings and the plaintiff need not prove its claim to obtain an attachment order.  *Transportes Navieros y Terrestes v. Fairmount Heavy Transp. N.V.*, 07-cv-3076, 2007 WL 1989309, at *4 (S.D.N.Y. July,

6 2001).  While *some* sort of inquiry at the motion to vacate stage into the merits may be required to ensure that a defendant's funds are not attached arbitrarily, Rule E(4)(f) "is designed to satisfy the constitutional requirement of due process by guaranteeing to the [defendant] a prompt post-seizure hearing at which he can attack the complaint, … the security demanded, or any other alleged deficiency in the proceedings." *Al Fatah*, 649 F. Supp. 2d at 298-99 (quoting Supp. Rule E, Advisory committee's notes (1985 amendment))(citing *Winter Storm Shipping,* 310 F.3d at 272).  At an E(4)(f) hearing, the inquiry into the merits of the underlying claim is limited to determining whether the claim "is facially sound or well-founded".  *Id*.  The plaintiff's verified complaint must merely contain factually allegations that meet that meet Rule E(2)(a)'s pleading standard by "stat[ing] the circumstances from which the claim arises with such particularity that the defendant …will be able … to commence an investigation of the facts and to frame a responsive pleading." *Padre Shipping, Inc. v. Yount He Shipping*, 559 F. Supp. 2d 328, 332 (2008)(quoting Rule E(2)(a)).

Classic's Verified Complaint set forth in its allegations all the elements of a valid *prima facie* breach of maritime contract claim.  Classic alleges that it and XCoal entered into a COA on December 2, 2019, and that the COA obligated XCoal to provide 800,000 tons of coal (or 7 shipments).  Ver. Compl. ¶ 7 & 18.  Classic further alleges that XCoal breached the COA by failing to provide the full allotment of coal (and only 2 out of the contemplated 7 shipments).  Ver. Compl. ¶ 18.  "As a result of XCoal's breach of the COA, Classic was damaged in the amount of approximately $1,017,952 per voyage for each of the 5 remaining voyages (approximately USD $5,089,760 in total) that were required by the COA, but were never performed."  Ver. Compl. ¶ 20.

XCoal does not dispute that these allegations are sufficient on their face to satisfy the Rule B valid *prima facie* admiralty claim standard.

> 2. *XCoal's Arguments Are Not Germaine To The Rule B Prima Facie Standard And Are Otherwise Meritless*
>
> > (i) *Classic's Claim For Breach Of the COA is Not a Claim for Unpaid or Outstanding Freight*

XCoal does not dispute the existence of the COA, or that it was obligated under the COA to provide enough coal for 7 shipments, or that it breached the COA by failing to provide enough coal for 7 shipments.  Rather, XCoal argues that pursuant to the AMWELSH (1979) charter party form under which individual voyages under the COA were to be performed freight is not earned until the cargo is loaded onboard the vessel.  Dkt. # 17 at 7-8.  Therefore, XCoal argues, no freight was due and owning for the 5 missing shipments that it failed to provide.  This argument completely misconstrues the nature of Classic's claim.

Classic's claim with respect to the missing shipments is a claim for the breach of XCoal's obligations under the COA.  The bulk of the damages claimed by Classic do not stem from a claim for freight earned or outstanding arising under a specific voyage charter performed under amended AMWELSH (1979) charter party form and only a small portion of the damages Classic has asserted are for outstanding freight related to a number of voyages that were in fact performed under the AMWELSH (1979) charter party form (both performed under the COA, and other voyages that were not).  *See* Ver. Compl. 11, 13-16, & 21-22.  XCoal does not dispute that these referenced voyages were in fact performed. Conversely, Classic's primary claim for breach of the COA relates to damages resulting from XCoal's failure to provide the full cargos and the total number of shipments it was obligated to provide under the terms of the COA.  This claims does

not implicate the freight payment clause under the AMWELSH (1979) charter party form because the voyages never were performed due to XCoal's breach of the COA.

The traditional rule of damages for breach of contract seeks to place the non-breaching party in the same economic position it would have had if the contract had been performed. *See e.g.*, 24 Williston on Contracts § 64:1 (4th ed.); J. Calamari & J. Perillo, *The Law of Contracts* 521 (2d ed. 1977). When this rule is applied to a charterers' failure to supply cargos under a contact of affreightment or a charter party agreement the proper measure of damages is the net amount the vessel would have earned under the contract if contract had been performed. *See e.g., Aaby v. States Marine Corp.,* 107 F. Supp. 484, 486 (S.D.N.Y. 1951) (citing *The Gazelle, and Cargo*, 128 U.S. 474, 487 (1888)). That is exactly the claim for damages that Classic has asserted in its Verified Complaint. Had XCoal performed as obligations under the COA, the net amount Classic would have earned is approximately $1,017,952 per voyage for each of the 5 missing voyages (approximately $5,089,760 in total). Ver. Compl. ¶¶ 10 -20. Based on the allegations in the Verified Complaint, Classic has stated a valid *prime facie* admiralty claim under Rule B for breach of the COA.[3]

### (ii)    Classic's Mitigation Efforts

XCoal next raises issues with respect to Classic's mitigation of damages. Specifically, XCoal argues that Classic was "obligated to mitigate its damages by seeking and obtaining substitute employment for its vessels," and that "[b]ased upon information and belief," Classic did

---

[3] Furthermore, XCoal's arguments raises issue with respect to the interpretation of the parties' contracts, which issue – XCoal acknowledges - is to be decided in the pending NY arbitration.

employ its vessels in other trades.  XCoal further "believes" that other employment was more lucrative, and thus Classic has not suffered any damages resulting from XCoal's failure to provide cargo for the 5 missing shipments under the COA.  Dkt. # 17, at 8.

XCoal's argument raises several highly speculative factual issues – issues that are strongly disputed by Classic – that go far beyond the allegations asserted in the Verified Complaint and the scope of this Court's review under the Rule B *prima facie* claim analysis.  The mitigation issues raised by XCoal concern the merits of Classic's claims for damages for breach of the COA, and not whether Classic's claim is facially valid.  Furthermore, issues concerning Classic's mitigation of damages will be addressed in the pending NY Arbitration and should not be litigating in this Action.  *See e.g., Padre Shipping,* 599 F. Supp. 2d at 3323 (finding that plaintiff met the *prima facie* standard under Rule B where "the Complaint states a facially valid claim for breach of maritime contact," and refusing to resolve merit related issues finding that those issues were more properly resolved in litigation pending in another forum).

It should further be noted that, even if Classic did employ its vessels in other trade, New York arbitrators have found that under a contract of affreightment a claimant may still be entitled to lost revenue the vessel would have earned under the breached agreement if by use of its owned or chartered vessels the claimant could have performed both trades.  *See In re Arbitration between Alumina Transport Corp. and Occidental Chem. Co.*, SMA No. 2136, 1985 WL 1095307, at *7 (1985).  This demonstrates the point that XCoal's mitigation arguments, even when viewed in the most favorable light, do not in any way establish that Classic will not or could not obtain an arbitration award for the full amount of damages it seeks for its claim.

18

>           (iii)      *Force Majeure is an Affirmative Defense And is Not Germaine to*
>                      *the Rule B Prima Facie Claim Analysis*

XCoal argues that the *force majeure* clauses in the AMWELSH (1979) charter party excuses its breach of the COA because its failure to provide shipments was a result of the pandemic.  Dkt. # 17, at 9 - 10.  XCoal's own argument, however, establishes that the pandemic did not actually prevent it from performing under the COA.  Rather, due to the economic conditions related to the pandemic XCoal's buyer, POSCO, declined to purchase XCoal's product.   As unfortunate as the may have been for XCoal, it does not amount to *force majeure*.  In general, the basic purpose of a *force majeure* clause is to relieve a party from its contractual duties when its performance has been directly prevented by a force beyond its control.  *See e.g., Nissho-Iwai Co., Ltd v. Occidental Crude Sales, Inc.*, 792 F.2d 1530, 1540-42 (5 th Cir. 1984).  XCoal's buyers' refusal to buy its cargo for economic reasons is not such a force, and the pandemic did not directly prevent XCoal's performance of the COA.

Furthermore, *force majeure* is an affirmative defense, and XCoal has the burden of proving that a *force majeure* event occurred and demonstrating that it made sufficient efforts to perform its contractual duties despite the occurrence of the event it claims constituted *force majeure*.  *Id.*; *see also Phillips Puerto Rico Core, Inc. v. Tradax Petroleum Ltd*, 782 F.2d 314, 319 (2d Cir. 1985).  A defendants affirmative defense is not in any way germane to the Rule B *prima facie* claim analysis.  In any event, as with XCoal's other arguments, XCoal *force majeure* argument presents an issue to be decided in the NY Arbitration.

#81893842_v6

## **<u>CONCLUSION</u>**

For all of the reasons stated herein, Defendants' motion to vacate the attachment should be denied.


Dated: February 8, 2021
         New York, New York


                                        Respectfully submitted,

                              By:          s/ James H. Power
                                        James H. Power
                                        F. Robert Denig
                                        HOLLAND & KNIGHT LLP
                                        31 West 52nd Street
                                        New York, NY 10019
                                        Telephone:  (212) 513-3200
                                        Facsimile:  (212) 385-9010
                                        Email: james.power@hklaw.com
                                              robert.denig@hklaw.com

                                        *Counsel for Classic Maritime Inc.*

20